Good morning, counsel. Sorry we're starting late this morning. I apologize. I am Mark Levine of the Office of the State Appellate Defender representing Joe Harvey, the appellant. There's no issue at all about Count 1. He admitted that he did that, and he was convicted, and he is serving 25 years at 85% on that one. But the conviction on Count 2, aggravated battery of a child, that one must be reversed for lack of evidence that he did it. Count 2 charged that he knowingly caused great bodily harm to J.W., a child under the age of 13, and that he struck J.W. about the body with his fist. Now, after presenting no evidence at trial that he did strike the baby with his fist, the State abandoned that claim in closing argument, and argued instead that he committed aggravated battery in some other way by causing a fracture to the baby's tibia. That's the bone that goes between the knee and the ankle, the lower leg. Now there was some dispute between the experts about whether there actually was a fracture. However, the judge credited the State's expert that said there was a fracture, so that's our starting point. There was evidence to support a fracture, the judge believed it, so that's where we have to start, there was a fracture. But what's missing was evidence that Joe Harvey did it, that he caused that fracture to the lower leg. But we know he had his hands at least on the lower part of that child's body, isn't that correct? We know, yes, Your Honor, that's correct, that we know that he had his hands on the child's buttocks. There were hand-shaped bruises on the buttocks, yes, Your Honor. All right, but we also know that a child three months old is pretty small, isn't that correct? And so that during the sexual act that was committed, it would seem reasonable that his hands didn't always stay on the buttocks, that they may have moved to a leg to keep the child, or that the child's legs may have gotten in between his legs, isn't that correct? So the fact that he didn't say he had his hand on the tibia doesn't necessarily mean that the injury didn't happen during the course of the sexual act. Thank you, Your Honor. That's exactly the point that I wanted to speak to first. The evidence here is unusually precise. One of the doctors testified there were hand-shaped bruises on the baby's buttocks. Now, he had the baby on top of him. He wasn't on top of the baby. The baby said, there's nothing to contradict this, the baby was on top of him. Well, certainly not on his chest. Well, it was up in this upper part of his body, and he was moving the baby up and down on his... Well, it really had to be in the lower part of his torso in order for this to happen with a three-month-old baby, correct? Correct, and his arms were long enough, he held the baby down there. Now, what's significant is he said that that's how he held the baby. That's corroborated by where the hand-shaped bruises are. The doctor said that one of the state's experts testified about how a fracture could happen, said that it would have required force applied to the leg somehow or another. And the baby's legs certainly could have been in between his legs, isn't that correct? We don't see any bruises over there, unlike on the baby's buttocks. We don't necessarily have to have a bruise to have a fracture. We all know that. Well, we know the baby's... Especially, excuse me, on a baby that young where the bones are very soft and malleable. The state's experts said that it would have taken some force to create this, and force, more than likely, would have left a bruise. And he was moving pretty forcefully when he was committing that sexual act for the time that he had the baby. But the question is, where was he applying the force? He admitted that he did the sexual act. He admitted that to the police, and it's corroborated. But he consistently and always denied touching or hanging on, gripping the baby's leg. But his hands wouldn't have to be on the lower leg to cause a fracture. I mean, the fracture could have occurred during this act in some other fashion, other than him grabbing the lower leg and twisting or doing something of that nature, correct? But there's no indication that it did. Again, there's no bruises, and there's no indication that it did. And once again, the baby was on top of him, on top of him. He wasn't on top of the baby. Counselor, I think it's fair to say, your point, I think, is that there's really no specific evidence that the defendant actually gripped the victim's lower leg. There's no finger prints, there's no bruising, things like that. And he denied it, yes. But let me ask you a general question. We know the standard of review here on an appeal where conviction has been entered is whether reviewing the evidence in the light most favorable to the prosecution, any rational trier fact could have found the essential elements of the crime beyond a reasonable doubt. Generally, that standard of review does not allow for the reviewing court to substitute its judgment for the trier fact and credibility and weight. So why then, how do you overcome, then, that standard of review here? Although the facts are viewed in the light most favorable to the prosecution, nevertheless, there have to be facts. This is not, the standard of review is not a license for the trial court to take a guess. There have to be facts in the record that this court can review, the facts, and see whether an inference, a reasonable inference, can be made from those facts. And what we're lacking here is facts. What we're left with is a guess. It has to, proof beyond a reasonable doubt is more than, it's possible. It may even be possible that, as Your Honor suggested, it may even be possible. I don't know. But even if it were, that's not proof beyond a reasonable doubt. This court has to see, be able to see and point to in the record some sort of, some fact from which the inference would be reasonable. Now, the state's brief doesn't suggest any such fact. And if I might, I would like to go through the evidence and look at each of the possible facts that one might possibly think could be that person. Don't lose your train of thought there, but let me ask you a quick question first. Yes, sir. The trial court found that the defendant was not believable as it relates to him only touching the buttocks area, correct? I don't remember that specific finding, but I certainly don't remember that it's not. What would you call the trial court's finding regarding the defendant's testimony? Specifically on this point, I don't, I don't remember. There was no, nothing suggested that he did touch, that he did grip the lower leg. He denied it. He denied gripping the lower leg. Even if the court said, I don't believe him, there was nothing, there was no evidence to support a contrary finding. Was there any medical evidence presented to establish when the fracture occurred? Thank you. Next important point that I wanted to get to. Yes, Your Honor, there certainly was. All of the experts agreed that it could not be determined more precisely than within a few days when it happened. This distinguishes Count II from Count I, where we know very precisely when it happened. In Count I, the bruises on the baby's buttocks were not there in the evening. They were there in the morning after the baby was alone with the defendant during the night. On Count II, however, we don't have such a narrow window for when it would have happened. As I say, they all agreed that you couldn't tell except within a few days of when it happened. The state's expert, Dr. Shaik, said it could have happened on June 15th, and it was on the 18th that the baby was taken to the emergency room. Now, on the 18th, the morning of the 18th, Dr. Ozkekir, who examined the baby, said that she was active, alert, and not in distress, which would not be what you would expect if the baby had a recent fracture to her leg. But anyway, my main point here is that you couldn't tell from looking at the baby or from the baby's behavior that there had been a fracture. The fracture was discovered only from an X-ray that the hospital took as a matter of its protocol. Whenever a child comes in for suspected child abuse, they do this X-ray. It was from examining the X-ray that they discovered what appeared to the state's expert to be a fracture. So we don't know when it happened except within this period. Now, June 15th is a very significant date because on June 15th, the baby was still in the care, so to speak, of her mother. This was before she brought the baby to Joe Harvey's family to take care of while she went out to get high. That was her testimony. Now, we don't know who was with the baby on June 15th besides the mother, under what circumstances. We know absolutely nothing about that. Yet all the experts agreed that it was impossible to determine that the fracture didn't happen then. And if it's impossible to determine that, according to the experts, then the judge couldn't determine it either. There was nothing he could guess. But as I say, for proof beyond a reasonable doubt, we have to be able to point to some fact and say that this inference from this fact is reasonable. The state's experts, all the experts, negated that possibility by saying that we couldn't tell exactly when it occurred. And the time window included a time when the baby was with persons unknown. Well, circumstantially, we know that the baby let out a blood-curdling scream during the middle of the night when the defendant was with the baby. Isn't that correct? We know that. Yes, we know that. But we also know what else was happening at that time, and it's not impossible that the baby was screaming because of count one. The next morning, the baby was, according to the doctor examined, not in distress. The mother also, not the mother, the defendant's mother, testified that that's at trial. Maybe she's backpedaling. The blood-curdling scream is the statement she gave to police at trial. She testified that that's the way the baby cries when she cries when she's hungry. I don't know. The point is it wasn't just count two that was happening. Count one happened, and the baby could well have screamed because of that. So the scream doesn't prove count two, and you can't infer count two from that. Does the record distinguish the kind of cry? Was the baby crying continuously? The way the briefs talk about it, it was a blood-curdling scream, which is a different sound than a baby crying for a sustained period of time. Well, this event happened very quickly. It didn't go on for a long time. The only evidence we have is that he said he did it, I think, five or six times or something like that. It would have taken a very short period of time. So if the baby screamed, it could well have been for that. I mean, we certainly can't infer anything other than that. Also, I wanted to point out a mistake that I made in my brief. Let me bring to the Court's attention a very badly written sentence of mine on page 10, where you could read my sentence to say that Dr. Shake testified that the fracture was consistent with rocking the baby up and down on the shaft of his penis. That was my own bad writing. He never said that. He never said anything like that. It was a compound sentence in which I was attempting to summarize the State's argument. That was the State's argument. That was not evidence. When I read that sentence in preparing for this morning, I thought, what am I arguing here? And then I looked into it a little bit. So I just wanted to clarify that for the Court. Proof beyond a reasonable doubt requires some facts, facts from which it is possible to infer reasonably that the defendant did it. It's not enough to show that the defendant did something else that was awful. He was convicted of that. He's serving 25 years for that. He no doubt deserves it. But count two is a different question. The record contains no evidence from which it can be reasonably inferred, beyond a reasonable doubt, that he did that. You can't infer it from the fact of behavior in count one. The State's own expert, Dr. Rangala, expert in child abuse, said that a fractured tibia would not be an expected result of that behavior. She was asked, would it be rare? And she said, yes, absolutely. So we can't infer it from the fact of count one. It's not a normal result of count one. And there's no additional evidence to show that the lower leg was involved in count one. So it can't be inferred from that. Unlike count one, which has a very limited time frame when it happened, when the baby was alone with the defendant, there's no such evidence to limit the time for count two. That could have happened, it could have happened, according to the State's own expert, while the baby was alone with the mother and whoever else was with her. You'll have time on rebuttal, counsel. Thank you very much, Your Honor. Mr. Pensica. Good morning, Your Honors. My name is Randy Pensica, and I'll be arguing on behalf of the people this morning. I apologize for mispronouncing your name. I should know by now, I'm sorry. That's quite all right, everyone. If I could, I'd like to pick up with something Justice Burke asked defense counsel during his presentation, and that was regarding credibility determinations rendered by the trial court. A very important credibility determination was rendered here regarding what the defendant's version of events. In his interview, the defendant steadfastly refused to change the story that his hands never left the baby's back, the small of the baby's back. The court did not believe the defendant. I believe that's at Record 519. The fact that the court didn't believe the defendant doesn't create evidence that he did, that he did grab the boy. True, but there was evidence to support the fact that the defendant's hands left the small of the baby's back, particularly the bruising on the buttocks and the bruising on the right leg, which was the leg that was fractured. Did the defendant know when he was being interviewed by the police that the child had a broken tibia? He did, and that was very clear in the interview. And it was clear from my perspective when viewing the interview, the defendant wanted to portray the story as not including breaking the baby's leg. That was something that he was very adamant about, that his hands never left the small of the baby's back, so he couldn't have broken the baby's leg. Was it the State's theory at trial that denied? First of all, the indictment said, the State was receiving an indictment from the grand jury, that the defendant punched the baby in the leg with his fist, and there was no evidence of that. Right, and that's an issue not being appealed now. But then we get to trial, and then the State realized, of course, there's no evidence of hitting, so the State's argument, I believe, was that he grabbed the lower leg. Yes. And is there any evidence of bruising, or any other evidence, other than the trial court not believing the defendant would believe his hands left the lower leg? Justice, you're absolutely correct. There's no evidence of bruising on the lower leg, but there's evidence of bruising caused by a hand grip on the leg, the upper part of the leg, the inside of the thigh. And the defendant... Is it the same leg? It's the same leg. Same leg that was broken. It is. I see. The defendant denied doing that. Okay. So the inference, the reasonable inference is that he might have touched the leg anywhere, and the type of injury sustained on the lower leg was consistent with the type of leg sustained on the upper leg being caused by a hand grip. The expert testimony is very clear on that, that both... I'm going to take the other side of that for a second and say, if you have a hand grip on the upper leg that leaves a bruise, and then you have a hand grip on the lower leg that doesn't leave a bruise, isn't it? Or there's no... I should say there's no bruise on the lower leg. Can't it be argued that it's reasonable inference that there was no hand grip on the lower leg because there's no bruising? Well, the expert testimony on the fractured tibia concluded that it was caused by a hand, either two hands grabbing the bone and bending it, or one hand squeezing the bone and bending it. There's no other evidence on how the baby's leg was broken in the record. It was one of the two choices. So really, if we're talking up here about the baby's leg being jammed into the defendant's leg while this act is going on or something of that nature, there's no evidence of that? I don't think that would be a reasonable inference from the record, no. Counsel, what about opposing counsel's argument that the injury could not have been dated to more than within a few days of the examination, and during that period of time the baby was outside of the custody of the mother and obviously Mr. Harvey? So are we not speculating that maybe it happened when Mr. Harvey was with the child, or could you also argue it might have happened when he was not with the child? That, in terms of the standard, that may raise a doubt, but I don't believe it would be a reasonable doubt. And this is why. There's no evidence that there was any injury sustained by the baby until the baby was in the defendant's care for that evening. The baby's diaper was changed before. There was no evidence, physical evidence of injury. The defendant admitted he sexually assaulted the baby that night in the morning, and in the morning there was physical evidence of injury. But there's no evidence of this injury until the X-ray. Right, there's no physical evidence of this injury. When the child is in the ER, the child is not in distress. There's no bruising, nothing noticed about this particular injury until the X-ray. That's correct. Again, we're talking about circumstantial evidence and reasonable inferences and trying to draw a line between inferences and assumptions and guesses. You know, if you have a child who's not in distress after the fracture, then isn't it a reasonable inference that before this event occurred, before this attack occurred on this child, that the child wouldn't have been in distress because of this fracture? Let's say the fracture occurred when the child was with the mom. There's no evidence. The problem is there's no evidence in the record to reasonably infer that the injury occurred other than this evening. There's absolutely no evidence that the child was abused or that the mother was violent with the child or that the child was taken to a place where some unknown person might have had access to the child. There's nothing in the record to suggest any of that. What there is in the record is evidence to reasonably infer that the baby's leg was broken at the time the defendant sexually assaulted this baby. There needs to be an inference. Admittedly, there's no definitive evidence one way or the other, but let me ask you this question. This is admittedly an unusual fact pattern. Do you have any cases that stand for the proposition that where in the course of an assault, one injury is inflicted upon the victim, that it automatically elevates beyond a reasonable doubt all of the injuries that the victim sustained? Do you have any case law to support that? If there was a case, believe me, I would have cited it. Because we talk about inferences in a criminal case. Well, you have to look at the whole inference chain here, and if I could go through it very quickly. No injury is visible the night before. The night of, he admits he sexually assaulted the baby. He denies he moved his hands anywhere but off of the small of the baby's back. We have the blood curdling screen that brought the defendant's mother to the room to inquire about the baby, if the baby was okay. And through the closed door, he said everything's fine. Then we have the visible injuries to the baby, the bruising to the buttocks, the bruising to the leg, which, per defendant's story, couldn't have been caused by him because he never moved his hands off the baby's lower back. We know that he did because those injuries were visible the next morning. They weren't there before. We know the defendant caused these injuries to the baby, that they were caused by a hand grip, and we also know that the leg fracture was caused by a hand grip. I mean, it's a fairly long inferential chain, but it's there. And in order to overlook that chain, you would have to be saying the trial judge, who was sitting on the Sheriff's back here, was not rational, that it wasn't a rational inference, and I just don't think that's possible here. Under defendant's theory of offense, it doesn't make sense. How could he, if he inflicted the injuries on the baby, doing it the way he said he did it? He said that he held the baby's lower back and pushed the baby down on his pelvis, and yet his penis inflicted a tear in the baby's anus. There had to be something holding his penis in place while he was inflicting these injuries. And defense counsels said that the testimony regarding the expert, that the injury was consistent with the baby's legs being held. I believe that's in the testimony, that it had to be caused somehow. There was an anal tear. So it was being done with force, and his penis was being held in place, and it's reasonably confirmed that his penis was being held in place by the baby's legs, and that was what gave rise to the blood-curdling screen. It's a substantial chain, but it's a chain. So the blood-curdling screen was the breaking of the leg and not the tearing of the anus. It could be both, you know. But doesn't it sound like you're arguing, you're following inferences, but doesn't it sound like you're in the realm of speculation? No, because it's based on evidence. We know that the injury was caused by a hand grip. No other child, no other adult, there's no evidence in the records to support that any other person grabbed this baby's leg. We know the defendant did. We know from the bruising. The injury was definitely not caused by the hand grip up on the buttocks area. It had to be caused by a hand grip to lower it. The fracture, yes. Yes, yes. If there are no other questions, thank you. Thank you. Mr. Levine? Just a couple of points. One, Mr. Seneca said a couple of times that there's no evidence in the record from which to infer that it happened at a different time, but of course it's the state's burden to prove, to present the evidence. It's not the defendant's burden to prove his innocence. The fact is there's no evidence in the record to show when it occurred, and that's a huge gap in the evidence, and that's why Calp 2 has to be reversed. There was bruising on, mentioned a few times, bruising on the leg. The bruising on the leg was on the upper leg, and that's completely consistent with Calp 1. It's on the upper, not the upper, out of the leg, outside of the leg, but the upper thigh. So that's completely consistent with the conduct that was proved in Calp 1. It's not consistent with Calp 2 because that's at a different part of the body, and as Your Honor said, a baby is small, but a baby's not that small. There's a fair space between the upper thigh and the lower leg, especially when we're talking about, as the state's expert said, how that fracture would have had to have happened applying force over there. A baby is not like a glass that if you break one part, the whole thing shatters. The force, according to the state's expert, would have been applied at the place where the fracture was, not on the upper leg, which is somewhere else. So yes, there was bruising on the leg, but it was the upper thigh as the part of the leg where the bruising was. And if Your Honors have any other questions, I will try to answer them. Otherwise, I will close. No, thank you, counsel. Thank you very much, Your Honor. Thank you both, counsel. At this time, the court will take the matter under advisement and render a decision in due course. We stand in brief recess until the next case. Thank you.